UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


JOSEPH RUSSELL SEBULSKI,

        Petitioner,

v.                                                                    Case No. 3:16-cv-831-J-34PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____


## <u>ORDER</u>

### I. Status

      Petitioner Joseph Sebulski, an inmate of the Florida penal system, initiated this action on June 23, 2016,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Sebulski challenges a 2012 state court (Putnam County, Florida) judgment of conviction for aggravated battery. Sebulski raises five grounds for relief. <u>See</u> Petition at 5-20.[2]  Respondents have submitted a memorandum in opposition to the Petition. <u>See</u> Response to Petition (Resp.; Doc. 13) with exhibits (Resp. Ex.). On April 24, 2017, Sebulski informed the Court that he would not be filing a reply brief but would instead rely on the allegations contained within his Petition. <u>See</u> Petitioner's Reply to Order to Show Cause (Reply; Doc. 16). This case is ripe for review.

---

[1] <u>See</u> <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Procedural History

On August 30, 2011, the State of Florida (State) charged Sebulski by way of an amended Information with one count of aggravated battery on a person sixty-five years of age or older. Resp. Ex. A at 18. On May 18, 2012, Sebulski entered a negotiated plea of no contest to a lesser charge of aggravated battery. Id. at 63, 173. At the sentencing hearing held on June 12, 2012, Sebulski orally moved to withdraw his plea. Id. at 174. Sebulski's counsel did not adopt the motion, and the circuit court denied it on the merits. Id. Thereafter, the circuit court sentenced Sebulski pursuant to the plea agreement to a term of incarceration of five years in prison followed by a term of probation of seven years. Id. at 114-20.

Sebulski initially appealed the judgment and sentence to Florida's Fifth District Court of Appeal (Fifth DCA). Id. at 92. However, on July 30, 2012, Sebulski, through counsel, filed a notice of dismissal of his direct appeal, id. at 99, which the Fifth DCA approved on August 1, 2012. Id. at 112. Thereafter, Sebulski petitioned the Fifth DCA for a belated appeal, which the court granted on January 25, 2013. Id. at 140. Sebulski, with the assistance of counsel, filed an initial brief arguing that the circuit court erred in denying his motion to withdraw the plea. Resp. Ex. B at 1-17. The State filed an answer brief. Id. at 18-37. On May 13, 2014, the Fifth DCA per curiam affirmed the judgment and sentence without a written opinion, id. at 38, and issued its Mandate on June 6, 2014. Id. at 39.

On January 27, 2015, Sebulski filed a pro se petition for writ of habeas corpus with the Fifth DCA in which he argued his appellate counsel was ineffective for failing to argue fundamental error occurred because the circuit court did not acknowledge a factual basis for the plea on the record (claim one) and for failing to withdraw as his counsel despite

the fact that the Office of the Public Defender had previously certified a conflict of interest in the circuit court. Resp. Ex. C at 1-14. On June 15, 2015, the Fifth DCA denied the petition. Id. at 32.

On June 25, 2015, Sebulski filed a pro se motion for postconviction relief, pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Resp. Ex. D at 1-16. In the Rule 3.850 Motion, Sebulski raised two grounds of ineffective assistance of trial counsel, alleging counsel failed to advise him about a viable defense (ground one) and counsel failed to file a motion to dismiss the amended Information (ground two). Id. On October 26, 2015, the circuit court denied the Rule 3.850 Motion. Id. at 72-74. Sebulski filed a motion for rehearing, which the circuit court denied. Id. at 95-98. On May 17, 2016, the Fifth DCA per curiam affirmed the circuit court's denial of Sebulski's Rule 3.850 Motion without a written opinion. Id. at 100. The Fifth DCA issued is Mandate on June 10, 2016. Id. at 101.

### III. One-Year Limitations Period

This action is timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't

of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017).

"It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Sebulski's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's

adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the

Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that a petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[4] supra, at 747–748, 111 S. Ct. 2546; Sykes,[5] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage

---

[4] Coleman v. Thompson, 501 U.S. 722 (1991).
[5] Wainwright v. Sykes, 433 U.S. 72 (1977).

of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id</u>. at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

"[A] claim for ineffective assistance of counsel, if both exhausted and not procedurally defaulted, may constitute cause." <u>Henry v. Warden, Ga. Diag. Prison</u>, 750 F.2d 1226, 1230 (11th Cir. 2014); <u>see also</u> <u>Carrier</u>, 477 U.S. at 488; <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009) (citing <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000)) ("An attorney's constitutional ineffectiveness in failing to preserve a claim for review in state court may constitute 'cause' to excuse a procedural default."). But the petitioner must first present his or her ineffective assistance claim to the state courts as an independent claim before he may use it to establish cause to excuse the procedural default of another claim. <u>Carrier</u>, 477 U.S. at 488; <u>see also</u> <u>Henderson v. Campbell</u>, 353 F.3d 880, 896 n.22 (11th Cir. 2003). If the secondary ineffective assistance claim is itself procedurally defaulted, the "procedurally defaulted ineffective assistance of counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the

---

[6] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

ineffective assistance claim itself." <u>Henderson</u>, 353 F.3d at 897 (citing <u>Edwards</u>, 529 U.S. at 446 and <u>Carrier</u>, 477 U.S. at 478).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an

objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Sebulski alleges that the circuit court erred in denying his oral motion to withdraw plea because it used the wrong legal analysis in denying it. Petition at 5. Specifically, he asserts that the circuit court should have applied Florida Rule of Criminal Procedure

3.170(f) to his case. Id. According to Sebulski, the law as it relates to Rule 3.170(f) obligated the circuit court to allow him to withdraw his plea if he showed good cause. Sebulski believes that he established good cause when he argued that his attorney erroneously represented to him "that based upon his investigation of the case, he could not find any exculpatory evidence that would help the petitioner." Id. The circuit court denied the motion to withdraw plea based on trial counsel's representation that he did not discover any exculpatory evidence. Id. However, Sebulski asserts that this was the wrong analysis to undertake under Rule 3.170(f). Id. Instead, Sebulski contends that the circuit court should have focused on whether counsel's advice to him created a misapprehension that "infected" the voluntariness of his plea. Id. Sebulski avers that the victim's doctor had never been deposed so Sebulski was unsure if there was a factual basis for the "great bodily harm, permanent disability, or permanent disfigurement" element of the charged offense. Id. at 5-6. Accordingly, Sebulski maintains his counsel's misadvice and his own lack of knowledge as to the victim's injury represented a misapprehension significant enough to establish good cause to allow him to withdraw his plea. Id.

Respondents contend that Sebulski failed to exhaust the claim in Ground One because, although he raised a similar issue on direct appeal, Sebulski did not present this claim as a violation of federal constitutional law. Resp. at 7-9. The Court agrees. While asserting that the circuit court abused its discretion in denying his motion to withdraw plea, Sebulski relied solely on Florida law in arguing this point. See Resp. Ex. C at 1-15 (citing Graham v. State, 779 So. 2d 604 (Fla. 2d DCA 2001); Gray v. State, 754 So. 2d 107 (Fla. 4th DCA 2000); Luedtke v. State, 6 So. 3d 653 (Fla. 2d DCA 2009); Nicol v.

State, 892 So. 2d 1169 (Fla. 5th DCA 2005); Onnestad v. State, 404 So. 2d 403 (Fla. 5th DCA 1981); Robinson v. State, 761 So. 2d 269 (Fla. 1999); Taylor v. State, 870 So. 2d 72 (Fla. 2d DCA 2003); Thompson v. State, 50 So. 3d 1208 (Fla. 4th DCA 2010); Williams v. State, 762 So. 2d 990 (Fla. 4th DCA 2000); Fla. R. Crim. P. 3.170(f)). As Sebulski did not raise the federal nature of this claim in state court, the claim in Ground One is unexhausted and procedurally defaulted. See Baldwin, 541 U.S. at 29. Sebulski has not alleged any cause or prejudice to overcome this procedural default and, likewise, has not provided the Court with any evidence to demonstrate that a fundamental miscarriage of justice would occur if the Court did not address the merits of this claim. See Petition, Reply generally. Accordingly, the claim in Ground One is due to be denied as procedurally defaulted.

Even if properly exhausted, Sebulski would not be entitled to federal habeas relief on this claim because it involves the state court's application of state law, which is not cognizable in federal habeas proceedings. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (holding errors of state law are not cognizable in federal habeas review); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Whether or not the circuit court utilized the right "legal analysis" when evaluating Sebulski's motion to withdraw the plea made pursuant to a Florida Rule of Criminal Procedure is a matter of state law that does not call into question whether the circuit court violated the federal Constitution or laws. Indeed, Sebulski did not even allege violations of federal law in Ground One of his Petition. See Petition at 4-6. Accordingly, for the above stated reasons, Sebulski's claim here is due to be denied.

## B. Ground Two

In Ground Two, Sebulski contends that his appellate counsel was ineffective for failing to argue on direct appeal that the circuit court committed fundamental error when it accepted the no contest plea without a recitation of a factual basis. Petition at 8-10. According to Sebulski, the State never presented a factual basis to the circuit court and the circuit court never requested one at the plea colloquy. Id. at 9. Sebulski maintains that the record is devoid of any evidence that the victim suffered great bodily harm, permanent disability, or permanent disfigurement. Id. As such, Sebulski asserts that his appellate counsel should have argued in the initial brief that the circuit court's failure to ensure a factual basis existed for his plea constituted fundamental error. Id. at 9-10. Had appellate counsel raised this issue, Sebulski claims that the Fifth DCA would have reversed the judgment and remanded for further proceedings. Id. at 10.

Sebulski raised this claim in his petition for writ of habeas corpus filed with the Fifth DCA. Resp. Ex. C at 7-10. The Fifth DCA denied the petition without a written opinion. Id. at 32. To the extent that the Fifth DCA decided this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Sebulski is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground Two is without merit. The Court notes that "the due process clause does not impose a constitutional duty on state trial judges to ascertain a factual basis before accepting a plea of guilty or nolo contendere that is not accompanied by a claim of innocence." Wallace v. Turner, 695 F.2d 545, 548 (11th Cir. 1983). This is so because "[s]uch pleas do not present the issue of voluntariness, the fundamental constitutional consideration when evaluating the validity of a plea, that is raised by pleas coupled with claims of innocence." Id. While states may adopt procedural rules requiring the establishment of a factual basis, "[t]he federal Constitution, however, does not mandate them to do so, and a violation of such state procedural rules does not of *itself* raise constitutional questions reviewable by federal habeas courts." Id. (emphasis in original). Although the record reflects the State did not proffer a factual basis and the circuit court did not request one during the plea colloquy, the record also reflects that Sebulski did not assert his innocence prior to the circuit court accepting his no contest plea. Resp. Ex. A at 173. Accordingly, Sebulski is not entitled to federal habeas relief on this claim. See Turner, 695 F.2d at 548. As such, the claim in Ground Two is due to be denied.

### C. Ground Three

Sebulski maintains that his appellate counsel, an attorney with the Office of the Public Defender, was ineffective for failing to withdraw as his counsel when the Office of the Public Defender had previously withdrawn from representing him due to a conflict at the circuit court level. Petition at 11-12. Sebulski notes that the Office of the Public Defender for Florida's Seventh Judicial Circuit filed a motion to withdraw as counsel,

certifying a conflict of interest existed. Id. at 11. The circuit court granted the motion to withdraw and ultimately appointed private counsel to represent Sebulski for pre-trial, plea, and sentencing proceedings. Id. However, upon being granted a belated appeal, the circuit court re-appointed the Office of the Public Defender to represent him on appeal. Id. at 11-12. Once appointed for appeal, Sebulski contends that appellate counsel should have withdrawn for the same reason his trial counsel from the Office of the Public Defender withdrew. Id. at 12. According to Sebulski, appellate counsel's failure to raise a fundamental error argument on direct appeal shows appellate counsel's failure to withdraw prejudiced Sebulski. Id.

Sebulski raised a similar claim in his petition for writ of habeas corpus filed with the Fifth DCA. Resp. Ex. C at 11-13. The Fifth DCA denied the petition without a written opinion. Id. at 32. To the extent that the Fifth DCA decided this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Sebulski is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground Three is without merit. The Eleventh Circuit has explained the following concerning a defendant's Sixth Amendment right to counsel and conflicts of interest:

Under the Sixth Amendment, a defendant in a criminal case has the right to the effective assistance of trial counsel. See Strickland v. Washington, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Freund v. Butterworth, 165 F.3d 839, 858 (11th Cir. 1999) (en banc). This right includes having counsel whose work is not affected by a conflict of interest. See Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). A defendant claiming that his counsel rendered ineffective assistance due to a conflict of interest must, except in rare cases, establish an "actual conflict," i.e., a "conflict [that] adversely affected his counsel's performance." Mickens v. Taylor, 535 U.S. 162, 174, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). See also id. at 171, 122 S.Ct. 1237 (an "actual conflict" is "a conflict that affected counsel's performance—as opposed to a mere theoretical division of loyalties") (emphasis omitted).

To demonstrate adverse effect, Mr. Williams must point to some "plausible alternative defense strategy or tactic that might have been pursued." Freund, 165 F.3d at 860 (alteration and internal quotation marks omitted). To be "plausible," the alternative strategy or tactic must have been "reasonable under the facts. ... [But Mr. Williams] need not show that the defense would necessarily have been successful [if the alternative strategy or tactic] had been used[;] rather he only need prove that the alternative possessed sufficient substance to be a viable alternative." Id. (citations and internal quotation marks omitted). Finally, Mr. McWilliams [sic] "must show some link between the ... conflict and the decision to forgo the alternative strategy of defense. In other words, he must establish that the alternative defense was inherently in conflict with or not undertaken due to [Mr. Minix's] other loyalties or interests." Id. (citation and internal quotation marks omitted). See also Porter v. Singletary, 14 F.3d 554, 561 (11th Cir. 1994) (requiring that a defendant "point to specific instances in the record which suggest an impairment or compromise of his interests for the benefit of another party").

In contrast to most ineffective-assistance-of-counsel cases, the foregoing rule governing conflicts of interest is "prophylaxis," Mickens, 535 U.S. at 176, 122 S.Ct. 1237, so that the defendant must establish "adverse effect," but "need not demonstrate prejudice in order to obtain relief." Cuyler, 446 U.S. at 349–50, 100 S.Ct. 1708. Where there is a "breach[ of] the duty of loyalty, perhaps the most basic of counsel's

duties," and "it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests, ... it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest"—although "the rule [still] is not quite the per se rule of prejudice that exists for [certain other] Sixth Amendment claims." Strickland, 466 U.S. at 692, 104 S.Ct. 2052. The question is whether "the verdict [is] unreliable, [irrespective of whether] Strickland prejudice c[ould] be shown." Mickens, 535 U.S. at 173, 122 S.Ct. 1237.

United States v. Williams, 902 F.3d 1328, 1332-33 (11th Cir. 2018) (alterations in original). In Florida, "[a]s a general rule, a public defender's office is the functional equivalent of a law firm," and "[d]ifferent attorneys in the same public defender's office cannot represent defendants with conflicting interests." Bouie v. State, 559 So. 2d 1113, 1115 (Fla. 1990). A trial court is required "to appoint other counsel not affiliated with the public defender's office upon certification by the public defender that adverse defendants cannot be represented by him or his staff without conflict of interest." Babb v. Edwards, 412 So. 2d 859, 862 (Fla. 1982). However, if the conflict of interest is limited and personal in nature, i.e. unique to the specific attorney and the defendant, a trial court may allow the specific attorney to withdraw but not the entire Office of the Public Defender if there is no prejudice to the defendant. See Pena v. State, 706 So. 2d 1378, 1379 (Fla. 4th DCA 1998); Thomas v. State, 725 So. 2d 1171, 1173 (Fla. 5th DCA 1998); see also Ward v. State, 753 So. 2d 705, 709 (Fla. 1st DCA 2000) (quashing lower court's order denying motion to withdraw where alleged conflict affected entire branch of the Office of the Public Defender and distinguishing Pena and Thomas as cases "involving strictly personal, limited conflicts between a defendant and defense counsel.").

The record reflects that the circuit court initially appointed the Office of Public Defender for the Seventh Circuit to represent Sebulski. Resp. Ex. A at 7. However, on

August 9, 2011, the Public Defender moved to withdraw "due to a conflict of interest." Id. at 19. The Public Defender did not elaborate on the nature of the conflict of interest. Id. The circuit court granted the motion to withdraw, and ultimately appointed private counsel. Id. at 16, 25. Following the Fifth DCA's granting of Sebulski's petition for belated appeal, Sebulski moved to appoint conflict-free appellate counsel. Id. at 159. The circuit court granted the motion and appointed the Office of the Public Defender to represent Sebulski on appeal. Id. at 160. The Office of the Public Defender for the Seventh Circuit prepared and filed the initial brief. Resp. Ex. B at 1. Based on this record, the same branch of Office of the Public Defender, the Seventh Circuit, that withdrew from Sebulski's criminal case due to a conflict, ultimately represented him on appeal.

Neither the record nor Sebulski's allegations in his Petition inform the Court about the nature of the conflict of interest that led the Public Defender to withdraw.[7] Therefore, the propriety of whether another attorney from the same Office of the Public Defender could represent Sebulski without violating his Sixth Amendment rights cannot be determined. As such, Sebulski has failed to meet his burden in establishing his right to federal habeas relief. See Blankenship v. Hall, 542 F.3d 1253, 1270 (11th Cir. 2008) (citation omitted) ("It is the petitioner's burden to establish his right to habeas relief[,] and he must prove all facts necessary to show a constitutional violation.").

In any event, the Court finds that Sebulski cannot demonstrate that his Sixth Amendment right was violated because he cannot show how this unknown conflict of

---

[7] The record does reflect some tension and hostility between counsel and Sebulski on August 4, 2011, a few days prior to the Office of the Public Defender moving to withdraw. Resp. Ex. A at 166. However, nothing in the record discloses whether this tension or hostility was the conflict of interest expressed by the Office of the Public Defender in its motion to withdraw.

interest adversely affected his appellate counsel's performance or the outcome of the appeal. Sebulski maintains that appellate counsel's failure to raise a fundamental error argument based upon the circuit court's acceptance of his plea without the establishment of a factual basis demonstrates an adverse impact on counsel's performance. In considering this claim, the Court notes that a trial "court's failure to conduct an inquiry as to whether there was a factual basis for a plea may amount to fundamental error only if it resulted in prejudice to the defendant or manifest injustice." Cuevas v. State, 770 So. 2d 703, 705 (Fla. 4th DCA 2000). Accordingly, in order for Sebulski to show that the alleged conflict of interest adversely affected his appellate counsel's performance, he must demonstrate that the circuit court's failure to inquire into the factual basis for the plea prejudiced him.

Under Florida law, the phrase "'great bodily harm' does not lend itself to precise legal definition," because "[t]he extent and nature of a victim's injuries vary according to the circumstances peculiar to each situation, such as the amount of force used or the manner of attack." McKnight v. State, 492 So. 2d 450, 451 (Fla. 4th DCA 1986). Indeed, "[i]n some instances the extent of injury may not be immediately apparent." Id. However, "'Florida courts have generally defined 'great bodily harm' as 'great as distinguished from slight, trivial, minor or moderate harm, and as such does not include mere bruises as are likely to be inflicted in a simple assault and battery.'" Smith v. State, 175 So. 3d 906, 907 (Fla. 4th DCA 2015) (quoting T.W. v. State, 98 So. 3d 238, 243 (Fla. 4th DCA 2012)). Notably, in McKnight, Florida's Fourth District Court of Appeal affirmed a jury's finding of great bodily harm where only a single punch was thrown, resulting "in [an] extremely serious brain injury to the seventy[-]year old victim." McKnight, 492 So. 2d at 451.

The State provided medical records[8] as attachments to its response to Sebulski's Rule 3.850 Motion, which indicate the following: (1) the victim was seventy-nine years old at the time of the battery; (2) Sebulski hit the victim's head and jaw with his fist, which caused the victim to fall on the concrete ground; (3) Sebulski kicked the victim in his right chest; (4) the victim suffered an injury to his elbow and an injury to his brain resulting in a chronic subdural hematoma (SDH), which is the pooling of blood in or around the brain; (5) the doctor advised the victim that SDH can get bigger, so he must be vigilant in seeking emergency attention if certain symptoms arise; and (6) ten days after the attack the victim still suffered from a headache. Resp. Ex. D at 45-67. Here, Sebulski points to no evidence supporting a conclusion that the State could not establish the element of great bodily harm. To the contrary, the harm Sebulski inflicted on the victim could reasonably be considered great bodily harm particularly given the victim's age, the impact to the head causing the victim to fall on a concrete floor, the internal bleeding of the brain, and the subsequent headaches. See McKnight, 492 So. 2d at 451. Such injuries to an elderly man, particularly bleeding in the brain, cannot reasonably be considered trivial, slight, or minor. Accordingly, the circuit court's failure to find that a factual basis existed for the plea did not prejudice Sebulski in the manner he claims because any challenge to the factual basis concerning great bodily harm would have been meritless. As such, Sebulski cannot demonstrate the requisite prejudice needed to establish fundamental error on appeal, see Cuevas, 770 So. 2d at 705, which, likewise, means the alleged conflict of interest did not adversely affect Sebulski's appellate attorney's performance or the outcome of the

---

[8] These medical records were part of the discovery Sebulski and his attorney reviewed prior to entry of the no contest plea. Resp. Ex. A at 173-74.

appeal. See Williams, 902 F.3d at 1332-33. Based on the above analysis, Sebulski's claim in Ground Three is due to be denied.

## D. Ground Four

Sebulski asserts that his trial counsel was ineffective for advising him to enter a no contest plea when there was a viable defense available to him. Petition at 13-16. According to Sebulski, his counsel failed "to advise him that in order to convict him at trial, the State would be required to prove beyond a reasonable doubt that he intentionally or knowingly caused great bodily harm, permanent disability, or permanent disfigurement to the victim." Id. at 15. Notably, however, Sebulski also alleges that he communicated his belief to his attorney that there was no evidence to support the element of great bodily harm because "the victim suffered minor injuries only," but his attorney advised him the best thing to do was accept the plea because Sebulski faced up to thirty years in prison. Id. at 14-15 (emphasis in original). Sebulski contends that had he been advised of this defense, he would not have entered the plea agreement and would have proceeded to trial. Id. at 16.

Sebulski raised this same claim as ground one of his Rule 3.850 Motion. Resp. Ex. D at 3-8. In denying this claim, the circuit court explained:

> The Defendant's claims are refuted by the record. On May 18, 2012, the Court went through the plea colloquy with the Defendant and advised him of the State's burden of proof. Following the Colloquy, Trial Counsel stated on the record, in the presence of the Defendant, that he conducted depositions of the victim and numerous eyewitnesses, reviewed the victim's medical records, and discussed the evidence with the Defendant. The Defendant then accepted the plea.
>
> The Defendant made the choice to accept the plea on his own. Neither prong of Strickland has been met here. Ground One is denied.

<u>Id.</u> at 73 (record citation omitted). The Fifth DCA per curiam affirmed the circuit court's denial. <u>Id.</u> at 100-01.

To the extent that the Fifth DCA decided the claim on the merits,[9] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Sebulski is not entitled to relief on the basis of this claim.

Nevertheless, even if the state court's adjudication of this claim is not entitled to deference, the claim in Ground Four is without merit. Under Florida law, where a defendant concedes he was aware of his attorney's alleged deficiencies prior to entry of his or her plea, a defendant cannot assert the plea was involuntarily entered. <u>Davis v. State</u>, 938 So. 2d 555, 557 (Fla. 1st DCA 2006). The Court notes that Sebulski affirmatively stated in his Petition that before he entered his plea, he did not believe the evidence supported the required finding of great bodily harm. Petition at 14. Therefore, Sebulski cannot claim his plea was involuntarily entered. <u>See</u> <u>Davis</u>, 938 So. 2d at 557.

Moreover, even assuming counsel did not advise him of the State's burden in proving the victim suffered great bodily harm, Sebulski cannot demonstrate prejudice

---

[9] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

because nothing in the record suggests there was a reasonable probability that he would have rejected the plea. See Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (holding that to establish prejudice under Strickland, a defendant must show that there was a reasonable probability that he or she would have proceeded to trial if not for counsel's errors). As stated above, the medical records reflect that the victim suffered injuries to his elbow and head, the latter injury resulting in bleeding in or around his brain. Resp. Ex. D at 45-67. This competent evidence would have supported a finding of great bodily harm. See McKnight, 492 So. 2d at 451. Notably, the sentence Sebulski ultimately received, five years in prison followed by seven years of probation, was far less severe than the maximum sentence he faced, thirty years in prison, had he proceeded to trial. Indeed, Sebulski acknowledged as much during the plea colloquy when he stated that "the smart thing would be – be to take it, the offer . . . ." Resp. Ex. A at 173-5. In light of the non-viability of the alleged defense, the lesser sentence imposed, and Sebulski's statement during the plea colloquy, the Court finds there is no reasonable probability he would have foregone his plea deal and proceeded to trial based on this defense. See Hill, 474 U.S. at 58-59. Accordingly, for the above stated reasons, the claim Sebulski raised in Ground Four is due to be denied.

### E. Ground Five

Lastly, in Ground Five, Sebulski contends that his counsel was ineffective for failing to file a motion to dismiss the amended Information because the evidence did not establish a prima facie case of his guilt. Doc. 1 at 17-20. Sebulski maintains that there was insufficient evidence to support the element of great bodily harm. Id. at 19. As such, he avers that counsel should have filed a motion to dismiss. Id. But for this alleged error,

Sebulski claims he would not have accepted the plea and would have proceeded to trial. Id. at 20.

Sebulski raised a similar claim in his Rule 3.850 Motion. Resp. Ex. D at 8-14. The circuit court denied this claim, stating:

> The Court finds that there were no legally sufficient grounds to file a Motion to Dismiss, supported by Fla. R. Crim. P. 3.190(c)(4). Trial Counsel acknowledged on the record that depositions of the victim were completed, as well as other eye witnesses, and did review the medical records. All was communicated to the Defendant before he pled.
>
> Based on the above, it appears to the Court that Trial Counsel's strategic decisions not to file a Motion to Dismiss were reasonably sound. Neither prong of Strickland has been met. Ground Two is denied.

Id. at 73-74 (record citations omitted). The Fifth DCA per curiam affirmed the circuit court's denial. Id. at 100-01.

To the extent that the Fifth DCA decided the claim on the merits,[10] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Sebulski is not entitled to relief on the basis of this claim.

---

[10] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

Nevertheless, even if the state court's adjudication of this claim is not entitled to deference, the claim in Ground Five is without merit. Counsel cannot be ineffective for failing to put forth a meritless defense. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). As discussed above, the medical records provide competent evidence that the elderly victim suffered great bodily harm, in the form of bleeding of the brain, at the hands of Sebulski. Resp. Ex. D at 45-67. Accordingly, the record evidence would not have supported a motion to dismiss and, had counsel filed one on this ground, it would not have been granted. See McKnight, 492 So. 2d at 451. As such, counsel cannot be deemed deficient for failing to file a motion to dismiss that would not have succeeded. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573. In light of the meritless nature of Sebulski's argument to dismiss and the lenient sentence he received pursuant to the plea agreement, Sebulski also cannot demonstrate prejudice because there is no reasonable probability he would have foregone the plea deal and proceeded to trial. See Hill, 474 U.S. at 58-59. Sebulski has failed to demonstrate deficient performance or prejudice; therefore, the claim in Ground Five is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Sebulski seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Sebulski "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Sebulski appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is

not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of February, 2019.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

C:      Joseph Sebulski, #948755
        Bonnie Parrish, Esq.